IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSH CARDER,

                    Plaintiff,

v.                                          CIVIL ACTION NO. 1:16CV204
                                                    (Judge Keeley)

BRADLEY TINNEY,
Circuit Court Probation Officer;
BRIAN THOMPSON,
State Parole and Probation Officer;
BENITA MURPHY, Chairperson,
West Virginia Sate Parole Board;
UNKNOWN EMPLOYEES OF THE WEST
VIRGINIA DIVISION OF CORRECTIONS; and
UNKNOWN EMPLOYEES OF THE WEST
VIRGINIA REGIONAL JAIL AUTHORITY,

                    Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]

Pending before the Court are motions to dismiss filed by each of the named defendants seeking to dismiss the amended complaint filed by the plaintiff, Josh Carder ("Carder"). For the reasons that follow, the Court **GRANTS** the defendants' motions (dkt. nos. 25, 28, 41, and 48) and **DISMISSES** this case.

### I. BACKGROUND

On February 10, 2012, the Circuit Court of Lewis County, West Virginia, convicted the plaintiff, Josh Carder ("Carder"), of a third or subsequent offense of driving under the influence of alcohol, and sentenced him to an indeterminate term of one to three years. Carder began a period of home confinement on February 16,

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]

2012, that lasted until February 8, 2013. During that time, he served ten days of incarceration for violating the conditions of his home confinement. On February 9, 2013, Carder was released on parole and remained on parole until a curfew violation occurred on January 15, 2014. At Carder's sentencing on the parole violation, the defendant, Bradley Tinney ("Tinney"), a probation officer for the Circuit Court, calculated Carder's time served to that point. Carder alleges that Tinney miscalculated his time served as only 278 days, which caused his effective date of sentence to be incorrectly set as May 5, 2013.

Carder remained incarcerated on his parole violation from January 15, 2014, until August 15, 2014. Upon his release, Carder alleges that authorities erroneously placed him on parole again and that, on November 14, 2014, he was again revoked for another parole violation. This revocation resulted in his incarceration for an additional thirty days. Following his release on December 15, 2014, Carder again was placed on parole, but yet again was revoked on January 12, 2015, for another parole violation.

According to Carder, during his last period of incarceration, beginning January 12, 2015, he realized that his effective sentencing date was incorrect and that his sentence should have been discharged on July 28, 2014. He further alleges that he

reported this error to the defendant, Brian Thompson ("Thompson"), who allegedly stated that "[Carder] would not be under parole if he was not supposed to be." Dkt. No. 7 at 5. Additionally, in an attempt to resolve the error, Carder's girlfriend, Michele Hickman ("Hickman"), made phone calls to the defendant, Benita Murphy ("Murphy"), the chairperson of the West Virginia State Parole Board, and defendant Judy Fitzgerald ("Fitzgerald"), former Director of Parole Services. Allegedly, Murphy and Fitzgerald told Hickman that, "even if there was an error, there was nothing [they] could do until a court ordered his release." Id. Carder asserts that neither Murphy nor Fitzgerald attempted to investigate Hickman's complaint.

After continued efforts by Hickman, the error finally was addressed by the Lewis County Prosecuting Attorney's Office and, pursuant to the circuit court's amended sentencing order, Carder ultimately was released on April 10, 2015. He alleges that he is credited for 393 days beyond his original sentence of three years and that his liberty was deprived by either wrongful incarceration or parole for 257 days.[1]

---

[1]In his complaint, Carder is unclear as to why he alleges his liberty was deprived for 257 days, while he simultaneously alleges that he served 393 days more than his original maximum sentence.

3

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]

After filing his original complaint in this Court against Tinney, Murphy, Thompson, and unknown employees of the West Virginia Division of Corrections and the West Virginia Regional Jail Authority on October 26, 2016 (dkt. no. 1), Carder amended his complaint on December 15, 2016, to add Judy Fitzgerald as a defendant(dkt. no. 7).

Carder's amended complaint asserts two causes of action under 42 U.S.C. § 1983 and § 1988 for violations of his Eighth and Fourteenth Amendment rights under the United States Constitution. In addition, he alleges three state law claims, including reckless infliction of emotional distress, battery, and assault. Id. Each of the four individual defendants has filed motions to dismiss based on immunity, the applicable statute of limitations, and for failure to state a claim (dkt. no. 25, 28, 41, and 48).

### II. STANDARD OF REVIEW

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007)(quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

entitlement to relief requires more than mere labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544,
555 (2007). Indeed, courts "are not bound to accept as true a legal
conclusion couched as a factual allegation." Papasan v. Allain, 478
U.S. 265, 286 (1986). In considering whether the facts alleged are
sufficient, "a complaint must contain 'enough facts to state a
claim to relief that is plausible on its face.'" Anderson, 508 F.3d
at 188 (quoting Twombly, 550 U.S. at 547). "A motion to dismiss
under Rule 12(b)(6) tests the sufficiency of a complaint;
importantly, it does not resolve contests surrounding the facts,
the merits of a claim, or the applicability of defenses."
Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.
1992).

### III. DISCUSSION

All of the defendants argue that they are entitled either to
absolute or qualified immunity, that Carder's claims are barred by
the applicable statute of limitations, or that he has failed to
state a claim. Because the statute of limitations is an affirmative
defense, the Court declines to address this argument at this early
stage. See Fluharty v. City of Clarksburg, 2015 WL 2341727, at *3

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

(N.D.W.Va. 2015) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." (quoting Republican Party of N. C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). Nevertheless, as discussed below, all of the defendants are entitled to either absolute or qualified immunity as to the constitutional violations asserted in Counts One and Two. Furthermore, Carder has failed to state a claim as to his state law claims in Counts Three, Four, and Five.

**A.    The Defendant's are Entitled to Immunity from the Constitutional Violation Claims in Count One and Count Two**

*1. Tinney is Entitled to Absolute Immunity*

Tinney has moved to dismiss the claims against him, arguing that, because "the doctrine of judicial immunity [] extends to probation officers when assisting the court in carrying out judicial functions," he is immune from suit. The long-standing doctrine of judicial immunity entitles judges to absolute immunity for their judicial decisions, even when those decisions are clearly erroneous and without regard to the severity of the consequences. See Forrester v. White, 484 U.S. 219, 225 (1988); Pierson v. Ray, 386 U.S. 547 (1967); Bradley v. Fisher, 80 U.S. 335 (1871). The

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

Supreme Court of the United States has extended this absolute immunity to non-judges who perform functions integral to the judicial process. See Imbler v. Pachtman, 424 U.S. 409 (1986) (extending judicial immunity to prosecutors and grand jurors); Briscoe v. LaHue, 460 U.S. 325 (1983) (extending judicial immunity to witnesses, including police officers); Butz v. Economou, 438 U.S. 478 (1978) (extending judicial immunity to Executive Branch officials performing "quasi-judicial" functions). Building on this precedent, district courts have extended this quasi-judicial immunity to "probation officers sued for performing tasks 'intimately associated with the judicial phase of the criminal process.'" Gant v. U.S. Probation Office, 994 F.Supp. 729, 733 (S.D.W.Va. 1998) (quoting Imbler, 424 U.S. at 430).

In determining whether a government official is entitled to quasi-judicial immunity, the Supreme Court of the United States has adopted a "'functional' approach" that examines the nature of the functions rather than the defendant's "rank or title or 'location within the Government.'" Cleavinger v. Saxner, 474 U.S. 193, 201 (U.S. 1985) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982); Butz, 438 U.S. at 511). Six non-exhaustive factors determine whether absolute immunity exists. These include:

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

> (a) [T]he need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Cleavinger, 474 U.S. at 203 (citing Butz, 438 U.S. at 512). "Functions most apt to be accorded absolute, rather than qualified, immunity are those integrally related to the judicial process." Dorman v. Higgins, 821 F.2d 133, 136 (2d Cir. 1987).

Federal courts applying this functional test uniformly have concluded that probation officers act "as an arm of the court" when providing information to carry out sentencing obligations. Gant, 994 F.Supp. at 733 (S.D.W. Va. 1998) (citing Dorman, 821 F.2d at 137). Here, Tinney, the probation officer, at the behest of the Circuit Court, calculated Carder's time served following his first parole revocation on January 15, 2014. It is this calculation that Carder alleges was incorrect and deprived him of his liberty for 257 days.

Whether or not Tinney miscalculated Carder's time served, it is beyond debate that the nature of the function he performed was integrally related to the judicial process. Tinney provided information to his supervising court for the purpose of determining

8

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

Carder's sentence following his parole revocation. This task directly served the court for sentencing purposes; both parties agree Tinney performed the task "for the court." See Dkt. No. 7 at 4.

Because Tinney's conduct was in furtherance of the sentencing judge's ability to carry out judicial duties and his actions were integrally related to the judicial process, he was acting as an arm of the court. Gant, 944 F.Supp. at 733. He therefore is entitled to absolute immunity for his quasi-judicial functions. Accordingly, the Court **GRANTS** his motion and **DISMISSES WITH PREJUDICE** the claims asserted against him in Counts One and Two of the amended complaint.

> ## *2.* *Thompson, Fitzgerald, and Murphy are entitled to Qualified Immunity*

The remaining defendants, Thompson, Fitzgerald, and Murphy, contend that they are entitled to qualified immunity.[2] Under the

---

[2]Murphy additionally contends that she is entitled to absolute quasi-judicial immunity because she was performing a function integral to the judicial process. This argument is unavailing as the functions that Carder requested her to perform, mainly, reviewing his sentencing records to check their accuracy, were merely administrative. See Osborne v. King, 2006 WL 2371186, at *5 (S.D.W.Va. 2006) (noting that judicial immunity is for adjudicative decisions only and not for "administrative functions for which judges should not be given absolute immunity" (quoting Forrester, 484 U.S. at 222)).

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]

defense of qualified immunity, individual officials performing

discretionary functions are immune from liability for civil damages

insofar as their conduct does not violate "clearly established

statutory or constitutional rights of which a reasonable person

would have known." Harlow, 457 U.S. at 818; Covey v. Assessor of

Ohio Cty., 777 F.3d 186, 195 (4th Cir. 2015). The qualified

immunity doctrine "balances two important interests—the need to

hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties

reasonably." Pearson v. Callahan, 555 U.S. 223 (2009).

Qualified immunity is not just an immunity from liability, it

"is an entitlement not to stand trial or face the other burdens of

litigation." Willingham v. Crooke, 412 F.3d 553, 558-59 (4th Cir.

2005) (internal quotations omitted). The doctrine of qualified

immunity "protects officers who commit constitutional violations

but who, in light of clearly established law, could reasonably

believe that their actions were lawful." Estate of Armstrong ex

rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 898 (4th Cir.

2016) (quoting Henry, 652 F.3d at 531). "The qualified immunity

standard 'gives ample room for mistaken judgments' by protecting

'all but the plainly incompetent or those who knowingly violate the

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Society forgives officers for reasonable errors because "'officials should not err always on the side of caution' for fear of being sued." Id. (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)).

Finally, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' " Pearson, 555 U.S. at 231 (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Indeed, "[q]ualified immunity is meant to protect against liability for 'bad guesses in gray areas.' " Bellotte v. Edwards, 629 F.3d 415, 424 (4th Cir. 2011) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)).

In Saucier v. Katz, the Supreme Court of the United States laid out a two-step sequential analysis for courts to apply when determining whether an official is entitled to qualified immunity. 533 U.S. 194, 200-01 (2001). The first part of the analysis asks whether the alleged facts, when taken in the light most favorable to the injured party, establish that the conduct at issue violated a constitutional right. Id. at 201. The second question is "whether the right was clearly established." Id. at 201.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

In <u>Pearson v. Callahan</u>, the Supreme Court concluded that the
mandatory sequential aspect of <u>Saucier</u> was unnecessarily rigid.

> The judges of the district courts and the courts of
> appeals should be permitted to exercise their sound
> discretion in deciding which of the two prongs of the
> qualified immunity analysis should be addressed first in
> light of the circumstances in the particular case at
> hand.

555 U.S. at 236. Accordingly, courts have discretion to determine
which prong to address first; a defendant meeting either prong is
entitled to summary judgment. <u>Id.</u>

To determine whether a constitutional right is clearly
established, it is critical to articulate with specificity the
constitutional right allegedly violated. <u>See</u> <u>Saucier</u>, 533 U.S. at
201. Courts must determine the particular right "in light of the
specific context of the case, not as a broad general proposition .
. . ." <u>Id.</u> A plaintiff cannot simply point to a particular
constitutional amendment and allege a violation of the overarching
right it preserves, but instead must define the "right allegedly
violated . . . at the appropriate level of specificity." <u>Id.</u> at
201-02 (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999)). For
example, framing a claim as a violation of the Fourth Amendment
right to be free from unreasonable search and seizure is far too
broad, but framing the claim as a violation of the "right not to be

12

tasered, after having broken away from police officers but while
not threatening others or actively resisting arrest," would provide
sufficient specificity. Brown v. Chapman, 814 F.3d 447, 461 (6th
Cir. 2016).

Any claim that Thompson, Fitzgerald, and Murphy violated
Carder's right against over-incarceration is unavailing. Not only
would such an overly broad framing of the right allegedly violated
lack the necessary specificity, but the undisputed facts establish
that Tinney's miscalculation, not these defendants' actions or
inactions, caused Carder's over-incarceration.

Here, although not well articulated, the right allegedly
violated by the defendants is Carder's right to have the defendants
investigate his claims of over-incarceration. Nevertheless, Carder
does not point to, nor could the Court find, a clearly established
right requiring probation officers or parole board members to
investigate an inmate's claim of over-incarceration in the face of
a valid court order mandating a period of incarceration. These
defendants were not "plainly incompetent," nor did they "knowingly
violate the law" when they declined to investigate Carder's claim.
Hunter, 502 U.S. at 229 (quoting Malley, 475 U.S. at 341). It was
perfectly reasonable for them to presume that a facially valid
court order, entered after a hearing at which Carder appeared,

presumably with counsel, was correct and that no further inquiry was warranted. Probation officers and parole board members are not only instructed but are required to follow court orders. The remedy here for Tinney's miscalculation was not to complain to the defendants, but to seek an amended court order, which was the advice given by Murphy that Carder and his girlfriend, Ms. Hickman, eventually followed.

In conclusion, there is no clearly established constitutional right requiring Thompson, Fitzgerald, or Murphy, in the face of a valid court order, to investigate whether Carder's sentence was correctly calculated. For this reason, the defendants are entitled to qualified immunity and the Court **GRANTS** their motions and **DISMISSES WITH PREJUDICE** Count One and Count Two of the amended complaint.

**B.    The State Law Claims in Counts Three, Four, and Five Fail to State a Claim Against the Defendants**

The amended complaint contains three state law claims against the defendants, including (1) reckless infliction of emotional distress, (2) battery, and (3) assault. The Court will address each claim in turn.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

_1._   _Reckless Infliction of Emotional Distress_

Carder is unable to establish all of the elements of a prima facie claim of reckless infliction of emotional distress. To prevail on such a claim in West Virginia, a plaintiff must establish the following four elements:

> (1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Travis v. Alcon Laboratories, 202 W.Va. 369, 375 (1998). Here, Carder's allegations against the defendants fall far short of actions or inactions that were "atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency." Id.

Tinney were not reckless but negligent in calculating the amount of time Carder had served. His mistake, while unfortunate, does not rise to the requisite level of reckless infliction of emotional distress.[3] See, e.g., Herbert J. Thomas Memorial Hospital

---

[3]Although the Court concludes that Carder has failed to adequately plead his state law claim against Tinney, Tinney would

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

Assoc. v. Nutter, 795 S.E.2d 530, 545 (W.Va. 2016) (holding that even a "grievous mistake" was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," thus it did not rise to the level of reckless infliction of emotional distress).

As to Thompson, Carder has alleged only that "he dismissed [Carder's] concerns, stating that [Carder] would not be under parole if he was not supposed to be." See Dkt. No. 7 at 5. Given a facially valid court order placing Carder on parole, Thompson's disbelief and inaction hardly rises to a level that is "atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency." Travis, 202 W.Va. at 375.

As to Fitzgerald and Murphy, Carder has alleged that they informed Hickman, his girlfriend, that "even if there was an error, there was nothing [they] could do until a court ordered his

---

also be entitled to quasi-judicial immunity for those claims under West Virginia law. See, e.g., Parkulo v. West Virginia Bd. of Probation and Parole, 483 S.E.2d 507, 525 (W.Va. 1996) (holding that "Board of Probation and Parole, being a quasi-judicial body, is entitled to absolute immunity from tort liability for acts or omissions in the exercise of its judicial function"). Thus, the Court finds as an alternative grounds for dismissal that Tinney is entitled to quasi-judicial immunity for Carder's state law claims of reckless infliction of emotional distress, as well as for battery and assault, which are discussed below.

release." His ire is particularly focused on the fact that they
"made no attempts to investigate Ms. Hickman's report." Again, this
conduct is not so extreme and outrageous as to exceed all possible
bounds of decency. Not only were Fitzgerald and Murphy operating
under the reasonable presumption that the circuit court's order was
correct, but they also advised Hickman about what she needed to do
to secure Carder's release — advice she and Carder ultimately
followed.

Thompson, Fitzgerald, and Murphy may not have believed Carder
and Hickman, but their skepticism and inaction in the face of a
facially valid court order mandating Carder's sentence is simply
not "atrocious, utterly intolerable in a civilized community, and
so extreme and outrageous as to exceed all possible bounds of
decency." Id. Consequently, the Court **GRANTS** the defendants'
motions and **DISMISSES WITH PREJUDICE** Carder's state claims against
them in Count Three.

   2.    *Battery and Assault*

A defendant commits a battery if "(a) he acts intending to
cause a harmful or offensive contact with the person of the other
or a third person, or an imminent apprehension of such a contact,
and (b) a harmful contact with the person of the other directly or

17

indirectly results." <u>Tolliver v. Kroger Co.</u>, 498 S.E.2d 702, 711 (W.Va. 1997) (quoting Syl. Pt. 1, <u>Funeral Services by Gregory, Inc. v. Bluefield Community Hosp.</u>, 413 S.E.2d 79 (W.Va. 1991)). A defendant is guilty of assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." <u>W. Va. Fire & Cas. Co. v. Stanley</u>, 602 S.E.2d 483, 495 (W.Va. 2004).

As to his battery claim, Carder alleges that "the Defendants either directly caused, or created a situation substantially certain to result in, harmful and offensive contact with the Plaintiff during his time wrongfully incarcerated." <u>See</u> Dkt. No. 7 at 9. As to his assault claim, he alleges that "[t]he Defendants either directly caused, or created a situation substantially certain to result in, the Plaintiff's reasonable apprehension of harmful and offensive contact during his time wrongfully incarcerated." <u>Id.</u> at 10. And in response to the defendants' motions to dismiss, Carder attempts to argue that the defendants' actions "placed [him] in a position where each tort was substantially certain to result." <u>See, e.g.</u>, Dkt. No. 32 at 5.

What Carder has failed to allege, however, is that any of the defendants possessed the requisite intent that Carder suffer a

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

harmful or offensive touching or an imminent apprehension of such. Carder's legal conclusions and recitations of the elements of the offense do not meet the pleading requirements of <u>Iqbal</u> and <u>Twombly</u>. To reiterate, Thompson, Fitzgerald, and Murphy did not directly cause or create Carder's over-incarceration, which was a consequence of Tinney's mistake. Moreover, Carder has not pleaded that any of the defendants intended by any of their actions or inactions to commit a battery or an assault, nor has he made any factual allegations, beyond a lone conclusory statement, that he actual did suffer a harmful or offensive touching, or an apprehension of such. Finally, as to his bare contention that a battery and assault were substantially likely to occur, and that this alone can constitute a battery or assault, he cites no legal support for this assertion, nor could the Court find any. Consequently, Carder's claims of battery and assault are legally inadequate, and the Court **GRANTS** the defendants' motions and **DISMISSES WITHOUT PREJUDICE** Carder's state claims against Thompson, Fitzgerald, and Murphy in Counts Four and Five. As to Tinney, because he would be entitled to quasi-judicial immunity under West Virginia law, the Court **DISMISSES** Carder's state claims against him in Counts Four and Five **WITH PREJUDICE.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [DKT NOS. 25, 28, 41, and 48]**

### IV. CONCLUSION

For the reasons discussed, the Court concludes that each of the defendants is entitled to immunity as to Carder's constitutional claims against them in Counts One and Two. Further, pursuant to Fed. R. Civ. P. 12(b)(6), Carder has failed to adequately plead his state law claims in Counts Three, Four, and Five. Consequently, the Court:

- **GRANTS** Tinney's motion (dkt. no. 28) and **DISMISSES WITH PREJUDICE** all claims against him;

- **GRANTS** Thompson's, Fitzgerald's, and Murphy's motions (dkt. nos. 25, 41, and 48), **DISMISSES WITH PREJUDICE** Counts One, Two, and Three against them, and **DISMISSES WITHOUT PREJUDICE** Counts Four and Five against them; and

- **DIRECTS** the clerk to strike this case from the Court's active docket.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: August 10, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE